IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

---

RAFI GIBLY, CHRISTIAN VIERI,
YOSEF LIPKIN, ANTHONY NOUGUES
GUITERA, RG7 INVESTMENTS, LLC,
AND ANG OPERATIONS INC.,

         *Plaintiffs*

         - against -

BEST BUY CO., INC., and
BEST BUY PURCHASING LLC,

         *Defendants.*

Civil Action No.:_____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

---

Plaintiffs Rafi Gibly ("Gibly"), Christian Vieri ("Vieri"), Yosef Lipkin ("Lipkin"), Anthony Nougues Guitera ("Guitera"), RG7 Investments, LLC ("RG7") and ANG Operations Inc. ("ANG") (collectively, "Plaintiffs"), by and through their attorneys, Oved & Oved LLP, for their Complaint against Defendant Best Buy Co., Inc. and Best Buy Purchasing LLC (collectively, "Defendants" or "Best Buy"), hereby allege as follows:

**NATURE OF THE ACTION**

1. Plaintiffs bring this action to recover monetary damages resulting from Best Buy's participation in a fraudulent scheme that induced Plaintiffs to invest in sham businesses that supposedly provided delivery and installation services to Best Buy, but in reality, did no such thing and were actually part of a Ponzi scheme.

2. Specifically, while Plaintiffs were evaluating an opportunity to invest in these businesses, Best Buy validated these potential investments by twice providing private guided tours of its restricted New Jersey distribution center to Gibly, during which many Best Buy employees corroborated all of the investment's sales pitch.

3. The supervisors that Best Buy entrusted with managing this warehouse confirmed to Gibly that the businesses in which Plaintiffs were considering investing had several trucks making deliveries on behalf of Best Buy. Best Buy's employees also showcased to Gibly the logistical operations at the site, including Best Buy's computer systems that handled the pickup schedules for the trucks purportedly owned by the business seeking Plaintiffs' investments. Indeed, Best Buy's employees represented to Gibly that Best Buy was "the busiest it had ever been" due to COVID-19 related shutdowns, which would mean even more delivery opportunities for trucks owned by the business, along with greater profits. Armed with Best Buy's representations that the businesses were not only legitimate, but thriving, Plaintiffs invested more than $2,650,000 in the enterprise.

4. After making these investments, Plaintiffs discovered that the supposed businesses did not own any trucks, did not make any pickups from Best Buy's warehouse, and did not deliver any products on Best Buy's behalf. Best Buy and its employees plainly knew that the purported businesses were not providing any services to Best Buy, but they nonetheless knowingly made false statements to Gibly as part of a fraudulent scheme to induce Plaintiffs to invest in the Ponzi scheme.

## **PARTIES**

5. Plaintiff Rafi Gibly is a natural person who resides in Florida.

6. Plaintiff Christian Vieri is a natural person who resides in Italy.

7. Plaintiff Yosef Lipkin is a natural person who resides in Florida.

8. Plaintiff Anthony Nougues Guitera is a natural person who resides in Florida.

9. Plaintiff RG7 Investments, LLC is a Florida limited liability company with its principal place of business in Miami Beach, Florida, whose sole member resides in Florida.

10.     Plaintiff ANG Operations Inc. is a Florida corporation with its principal place of business in Miami Beach, Florida.

11.     Defendant Best Buy Co., Inc., upon information and belief, is a Minnesota corporation with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423.

12.     Defendant Best Buy Purchasing LLC, upon information and belief, is a Minnesota limited liability company with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423 and is a wholly-owned subsidiary of Best Buy Co., Inc.

## JURISDICTION AND VENUE

13.     This Court has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over all Defendants because Defendants conduct and transact business in the District of New Jersey and Plaintiffs' causes of action arise out of Defendants' activities conducted in, and directed towards, this district.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTS

**A.      Plaintiffs are Introduced to the Best Buy Scheme**

16.     Gibly is an entrepreneur with more than a decade of experience investing in real estate ventures and other businesses, including through his entity RG7.

17.     In early November 2018, an acquaintance named Yevgeny Shvartsshteyn ("Shvartsshteyn") began soliciting Gibly to invest in a purported business opportunity. Shvartsshteyn represented to Gibly that he and his associate, Arsen Lusher ("Lusher") had

contracted to provide home delivery and installation services on behalf of large consumer-facing businesses, including Best Buy.  Specifically, Shvartsshteyn and Lusher represented to Gibly that, pursuant to their agreements with Best Buy Purchasing LLC, they had purchased delivery trucks that retrieved packages of products from Best Buy's warehouse in Piscataway, New Jersey and made home deliveries and provided installation services to their intended recipients on Best Buy's behalf.

18. At the time, Shvartsshteyn and Lusher represented to Gibly that if he were to invest $200,000 in their business, they would use the funds to purchase an additional five trucks.  In exchange for this investment, they continued, Gibly would receive $25,000 per month for nine months; the first eight payments would repay Gibly's initial $200,000 investment, while the final payment would constitute a profit of $25,000.

19. Over the course of several weeks, Gibly asked Shvartsshteyn and Lusher specific questions regarding the details of their business in an effort to assess the quality of the investment that they had proposed to him.  Shvartsshteyn and Lusher purported to answer each of these questions thoroughly.

20. After considering the proposal and the information that he had received from Shvartsshteyn and Lusher, Gibly decided to make an initial investment.  Specifically, on or about December 15, 2018, Gibly entered into an agreement with Shvartsshteyn and Lusher pursuant to which he invested $200,000 in exchange for $225,000 to be paid in installments through September 1, 2019.  Then, on March 4, 2019, Gibly entered into an agreement with Shvartsshteyn and Lusher's entity, Shavary Enterprise, Inc. ("Shavary"), pursuant to which Gibly invested $350,000 in exchange for Shavary's commitment to make payments to Gibly through July 4, 2020, totaling $410,000.

21.     Gibly began timely receiving the payments as promised.  Encouraged by the success of his initial investment, on June 26, 2019, Gibly entered into another agreement with Shavary to invest an additional $200,000 in exchange for regular monthly payments of $25,000 from September 25, 2019 through June 15, 2020, totaling $250,000.

**B.     Best Buy's Role in the Fraudulent Scheme Begins**

22.     Throughout 2019, as Gibly received payments from Shavary under the first two agreements, Shvartsshteyn repeatedly emphasized to Gibly how well his business was performing and urged Gibly to make larger investments that could secure more favorable financial returns.

23.     During these discussions, Shvartsshteyn provided Gibly with documents that purported to substantiate his representations of the business, including a "Master Services Agreement" between Best Buy Purchasing LLC and Install Masters LLC ("Install Masters") pursuant to which Install Masters agreed to provide delivery and installation services to customers on behalf of Best Buy.  Shvartsshteyn represented to Gibly that Shvartsshteyn and Lusher controlled Install Masters.

24.     In a further effort to induce Gibly to increase his investment, and to persuade Gibly to recommend this investment to others, Shvartsshteyn and Lusher invited Gibly to attend a private tour of a Best Buy distribution center at 300 Ridge Road in Piscataway, New Jersey (the "Best Buy Facility"),[1] led by a Best Buy manager, to see firsthand how his money was being invested.

25.     Gibly accepted the invitation.  On March 11, 2020, as the COVID-19 pandemic grew in strength and the media reported that states and cities were contemplating issuing "stay at home" orders, Gibly met with Shvartsshteyn and Lusher at the Best Buy Facility to participate in the tour.  Upon arrival, Shvartsshteyn, Lusher, and Gibly were met by a Best Buy manager who

---

[1] Upon information and belief, Best Buy Inc. owns and/or operates the Best Buy Facility.

warmly greeted Shvartsshteyn and Lusher and clearly knew them well. The Best Buy manager then identified himself to Gibly as the Best Buy Facility's supervisor. Gibly explained to the Best Buy manager that he had invested with Shvartsshteyn and Lusher to purchase trucks that would provide delivery services for Best Buy, that he was considering making another substantial investment, and that he was also evaluating whether to recommend this opportunity to other potential investors.

26. The Best Buy manager then led Shvartsshteyn, Lusher, and Gibly through restricted areas of the expansive warehouse, including loading docks, and described in detail Best Buy's logistical operations at the site, including showing Gibly Best Buy's computer systems that handled the scheduling of pickups by the specific trucks owned by Shvartsshteyn and Lusher's companies (into which Gibly had invested) and explaining how it functioned. Indeed, the Best Buy manager repeatedly referred to Shvartsshteyn's and Lusher's delivery companies, and specifically represented that their trucks picked up orders early in the morning and returned to the distribution center late in the afternoon on a daily basis. Based on the Best Buyer manager's obvious relationship with Shvartsshteyn and Lusher and his specific comments regarding the trucks and the businesses, there was no question that Shvartsshteyn and Lusher were in business with Best Buy.

27. The Best Buy manager further represented to Gibly that he expected the amount of Best Buy home deliveries to surge in the coming months as more people stayed home due to the COVID-19 pandemic and anticipated governmental restrictions, which would mean even more delivery opportunities for Shvartsshteyn and Lusher's delivery companies, along with greater profits for investors such as Gibly and his friends.

28.     The tour lasted more than an hour and a half and covered the entire distribution center, including areas to which the public does not have access.  Gibly was impressed by this tour, the Best Buy manager's confirmation that Shvartsshteyn and Lusher maintained an ongoing business relationship with Best Buy, and representations that Best Buy was expecting an increase in its need for services rendered by Shvartsshteyn and Lusher's delivery companies.

C.     **Best Buy's Fraudulent Misrepresentations Induce Plaintiffs to Invest**

29.     Now reassured by the representations of Best Buy employees and by Shvartsshteyn's and Lusher's apparent affiliation with Best Buy, Gibly invested an additional $2,250,000 through RG7.  Specifically, RG7 entered into "Investment Agreements," dated July 29, 2020, August 31, 2020, and October 26, 2020, with Tyko Industries Inc. and Runn Enterprises, Inc., two additional entities that Gibly understood to be controlled by Shvartsshteyn and Lusher that had agreements with Best Buy to perform delivery and installation services.  Pursuant to those agreements, RG7 invested $450,000, $900,000, and $900,000, respectively, and Gibly was promised payments totaling $3,250,000.[2]

30.     Similarly, based on the representations made by the Best Buy manager during the March 11, 2020 tour of the Best Buy Facility, Gibly introduced Shvartsshteyn to the other Plaintiffs.  In the course of discussing Shvartsshteyn's investment opportunity, Gibly recounted his experience at the Best Buy Facility.  As Best Buy intended, Gibly emphasized Shvartsshteyn's and Lusher's close working relationship with Best Buy, the schedules for the trucks owned by Shvartsshteyn and Lusher's companies, and Best Buy's forecast for an increase in the need for services from such trucks, all of which had been confirmed by the Best Buy manager.

---

[2] Shvartsshteyn and Lusher represented that, due to Best Buy's policies and restrictions concerning the number of trucks that any single entity could use to provide delivery and installation services to Best Buy, they set up several companies to serve as investment vehicles.

31. Based on this explanation of the business opportunity, and in reliance on the representations made by the Best Buy manager, each of the other Plaintiffs invested with Shvartsshteyn and Lusher. Specifically:

   a. On August 15, 2020, Vieri invested $450,000 through an "Investment Agreement" with Tyko Industries, Inc. pursuant to which he was promised 13 monthly payments of $50,000 for a total of $650,0000; and

   b. On November 24, 2020, Lipkin invested $225,000 through an "Investment Agreement" with Highway Transport, Inc., an entity that Plaintiffs understood to be controlled by Shvartsshteyn and Lusher, pursuant to which Mr. Lipkin was promised 12 monthly payments of $25,0000 for a total of $300,000.

D. **Gibly Tours the Distribution Center a Second Time**

32. Shvartsshteyn and Lusher continued to urge Gibly to invest throughout 2020. They confirmed the Best Buy manager's earlier representation that the restrictions imposed as a result of the COVID-19 pandemic had drastically increased the demand for home delivery services.

33. In evaluating a new round of potential investments, and whether to recommend the business to additional investors, Gibly requested additional information from Shvartsshteyn and Lusher to corroborate the performance of their enterprise and its future prospects. As before, Shvartsshteyn and Lusher provided documents to substantiate their descriptions of the business and, again, invited Gibly to attend another private tour of the Best Buy Facility to confirm to Gibly the increased Best Buy business.

34. Gibly accepted the invitation, and on December 7, 2020, Gibly met with Shvartsshteyn and Lusher at the Best Buy Facility. Similar to Gibly's first private tour, a different Best Buy supervisor warmly greeted them, making clear to Gibly that Shvartsshteyn and Lusher also knew this Best Buy supervisor. Gibly was reassured and impressed by the fact that

Shvartsshteyn and Lusher were also familiar with a different Best Buy supervisor, reinforcing to Gibly that Shvartsshteyn and Lusher had an established business relationship with Best Buy.

35. Because of the COVID-19 pandemic, Best Buy had implemented additional procedures and checks since the first tour to further monitor potential visitors and ensure that only authorized personnel were granted access to the warehouse, including logging each visitor's driver's license. The fact that the Best Buy supervisor guided Gibly, Shvartsshteyn and Lusher through these procedures to visit restricted areas of the Best Buy Facility further confirmed the legitimacy of Shvartsshteyn and Lusher's business to Gibly. Gibly also explained to this Best Buy supervisor that he had invested with Shvartsshteyn and Lusher to purchase trucks that would provide delivery services for Best Buy, that he was considering making another substantial investment, and that he was also evaluating whether to recommend this opportunity to other potential investors, as he had done before.

36. The Best Buy supervisor introduced Gibly to several other Best Buy employees, who provided detailed descriptions of Best Buy's operations at the Best Buy Facility. For example, one Best Buy warehouse supervisor demonstrated the "MEC," Best Buy's mechanized, automated system for picking and packing products to be prepared for delivery and then loaded onto trucks owned by Shvartsshteyn and Lusher's companies.

37. This Best Buy supervisor also referred to "your orders" and schedules for delivery and installation in conversation with Shvartsshteyn and Lusher. This representation reinforced to Gibly that Shvartsshteyn and Lusher were in the business of delivering products on behalf of Best Buy and that they were both familiar with the Best Buy supervisor. The Best Buy supervisor also stated that Best Buy was "the busiest it had ever been" and that Best Buy had seen an increasing surge in online orders and deliveries as a result of the COVID-19 pandemic, confirming the

representations made by the Best Buy manager who accompanied Gibly on his first tour of the Best Buy Facility. The supervisor opined that this marked a permanent change in consumer behavior that would result in a sustained increase in online orders and demand for the delivery services provided by Shvartsshteyn and Lusher's companies.

38. This second visit to the distribution center reassured Gibly regarding the status of Plaintiffs' investments with Shvartsshteyn and Lusher. Gibly again relayed the details of his visit to the other Plaintiffs, as intended by Best Buy.

39. Relying on the representations of the Best Buy employees during the two visits, Guitera decided to invest with Shvartsshteyn.

40. On December 28, 2020, Guitera, through ANG, invested $225,000 pursuant to an "Investment Agreement" with PrimeIndustries, Inc., another entity that Plaintiffs understood to be controlled by Shvartsshteyn and Lusher and in contract with Best Buy Purchasing LLC. Pursuant to this agreement, ANG was promised twelve (12) monthly payments of $25,000 for a total of $300,000.

**E.      The Fraud is Revealed**

41. Unfortunately, Plaintiffs have since learned that all of Best Buy's representations were false and no genuine investment opportunity existed.

42. Beginning in or about December 2020, payments due under the investment agreements were delayed and then ceased entirely.

43. Initially, Shvartsshteyn and Lusher offered plausible excuses for this interruption in payments, including that the investment entities had to transition their accounts from one bank to another, and that money owed to them by Best Buy had not yet cleared into these new accounts.

44. Within weeks, however, Shvartsshteyn and Lusher admitted the truth. In January 2021, Shvartsshteyn and Lusher called Gibly and admitted that, from the beginning, the entire

business venture had been a fraud. They and their companies were not making any pickups and deliveries on behalf of Best Buy, and the entire scheme was designed solely to enrich Shvartsshteyn and Lusher, who tried to bring in new investors with enough money to pay off old investors. Put simply, the entire "business" had been a classic Ponzi scheme.

45. Plaintiffs then realized that the Best Buy employees who led Gibly through the tours of the Best Buy Facility had participated in the fraud. Upon information and belief, in the absence of any genuine delivery business being conducted by Shvartsshteyn and Lusher, the Best Buy managers knew that their representations regarding the delivery trucks that Shvartsshteyn, Lusher, and Plaintiffs had supposedly purchased were false. Indeed, it is clear that Best Buy and certain of its employees received kickbacks and other payments for making their material misrepresentations to Gibly, which they reasonably expected Plaintiffs to rely upon in evaluating and deciding to invest with Shvartsshteyn and Lusher.

46. To date, Gibly and RG7 have received only $350,000 for their investment of $2,250,000 and have been damaged by at least $1,900,000. Similarly, Vieri has been damaged by at least $300,000, Lipkin has been damaged by at least $225,000, and Guitera and ANG have been damaged by at least $225,000. In aggregate, Plaintiffs' damages total more than $2,650,000.

### AS AND FOR A FIRST CLAIM FOR RELIEF
### (Aiding and Abetting Fraud)

47. Plaintiffs re-allege and incorporate the allegations set forth in the above paragraphs as if fully restated herein.

48. As set forth above, Shvartsshteyn and Lusher induced Plaintiffs to enter into a fraudulent investment scheme.

49. As set forth above, Shvartsshteyn and Lusher have since admitted that the entire investment opportunity that they presented to Plaintiffs was a sham.

50. As set forth above, because Shvartsshteyn and Lusher never operated a genuine delivery business, and Best Buy knowingly participated in the fraud and provided substantial assistance in the form of Best Buy personnel who escorted Gibly through the Best Buy Facility and confirmed the validity of Shvartsshteyn and Lusher's business by knowingly misrepresenting that they conducted delivery operations on behalf of Best Buy.

51. Best Buy is liable for the conduct of its employees and agents because under the facts and circumstances alleged above, Plaintiffs reasonably relied on the agents' apparent authority to act on behalf of Best Buy.

52. As a direct and proximate result of Best Buy's misconduct, Plaintiffs have been damaged in an amount to be determined at trial, but in no event less than $2,650,000, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**(Fraud)**

53. Plaintiffs re-allege and incorporate the allegations set forth in the above paragraphs as if fully restated herein.

54. As set forth above, Best Buy, through its employees and agents, knowingly misrepresented Shvartsshteyn and Lusher's business relationship with Best Buy.

55. Best Buy had actual knowledge of the materially false and misleading representations and omissions in their communications with Plaintiffs; or, in the alternative, Best Buy had a reckless disregard of the materially false and misleading representations and omissions contained therein.

56. Best Buy was aware that, given its employees and agents' positions and their ability to grant Gibly access to the Best Buy Facility, that Plaintiffs would rely upon Best Buy's misrepresentations in deciding to invest with Shvartsshteyn and Lusher.

57. Plaintiffs reasonably relied on Best Buy's representations in deciding to invest with Shvartsshteyn and Lusher.

58. As set forth above, Best Buy is liable for the conduct of its employees and agents.

59. As a direct and proximate result of Best Buy's fraud, Plaintiffs suffered losses in an amount to be determined at trial, but in no event less than $2,650,000.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (Negligent Misrepresentation)

60. Plaintiffs re-allege and incorporate the allegations set forth in the above paragraphs as if fully restated herein.

61. As set forth above, Best Buy knowingly misrepresented Shvartsshteyn and Lusher's business relationship with Best Buy to Plaintiffs, including their purchase of trucks to provide delivery services for the company.

62. Plaintiffs reasonably relied on these representations in deciding to invest with Shvartsshteyn and Lusher.

63. As set forth above, Best Buy is liable for the conduct of its employees and agents.

64. As a direct and proximate result of these false representations, Plaintiffs suffered losses in an amount to be determined at trial, but in no event less than $2,650,000.

### JURY DEMAND

Plaintiffs demand a jury trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs hereby request that the Court grant the following relief:

a. Judgment in Plaintiffs' favor and against Defendants in an amount to be determined at trial, but in no event less than $2,650,000, plus pre-judgment interest;

b. Plaintiffs' costs and disbursements incurred in this suit;

c. Plaintiffs' attorneys' fees to the full extent permitted by law; and

    d.  Any such other and further relief as the Court may deem just and proper.

Dated: New York, New York
August 3, 2021

By: *s/ Aaron J. Solomon*
Terrence A. Oved, Esq.
Aaron J. Solomon, Esq.
OVED & OVED LLP
*Attorneys for Plaintiff*
401 Greenwich Street
New York, New York 10013
Tel: 212.226.2376
terry@ovedlaw.com
aaron@ovedlaw.com

Glen Lenihan, Esq. (*pro hac vice* application forthcoming)
Andrew L. Kincaid, Esq. (*pro hac vice* application forthcoming)
glenihan@ovedlaw.com
akincaid@ovedlaw.com

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**

I hereby certify, pursuant to 28 U.S.C. § 1746, that the matter in controversy is not the subject of any other action pending in any other court, or of any pending arbitration or administrative proceeding.

Dated: New York, New York
August 3, 2021

*s/ Aaron J. Solomon*
Aaron J. Solomon, Esq.