**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RAFI GIBLY, *et al.*,

        *Plaintiffs*,

   v.

BEST BUY CO., INC., *et al.*,

        *Defendants*.

Civil Action No. 21-cv-14531

**OPINION & ORDER**

**John Michael Vazquez, U.S.D.J.**

      Presently before the Court is a motion to dismiss filed by Defendants Best Buy Co., Inc. and Best Buy Purchasing LLC.  D.E. 19.  Plaintiffs filed a brief in opposition, D.E. 25, to which Defendants replied, D.E. 32.[1]  The Court reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons set forth below, Defendants' motion is **GRANTED**.

---

[1] Plaintiffs filed a letter asking that the Court disregard an exhibit to Defendants' reply brief.  D.E. 34.  The Court did not consider the exhibit--a purported copy of a Master Services Agreement between Defendant Best Buy Purchasing, LLC and a non-party--in deciding this motion.

[2] For purposes of this Opinion, the Court refers to Defendants' brief in support of their motion to dismiss (D.E. 19-1) as "Defs. Br."; Plaintiffs' opposition brief (D.E. 25) as "Plfs. Opp."; and Defendants' reply (D.E. 32) as "Defs. Reply."

I.     **FACTUAL BACKGROUND**[3] **& PROCEDURAL HISTORY**

In November 2018, non-party Yevgeny Shvartsshteyn approached Plaintiff Rafi Gibly with an opportunity to invest in a business that Shvartsshteyn co-owned with non-party Arsen Lusher. Compl. ¶¶ 17, 20.  The business provided "home delivery and installation services on behalf of large consumer-facing businesses," such as Best Buy.  *Id.* ¶ 17.  Between December 15, 2018, and June 26, 2019, Gibly made three investments totaling $750,000.  *Id.* ¶¶ 20-21.  In return, Gibly anticipated that he would be repaid for his investments and make a $135,000 profit.  *Id.* Throughout 2019, Gibly received payments as expected and as set forth in agreements related to each investment.

Shvartsshteyn sought additional investments from Gibly and tried to persuade Gibly to recommend the investment to others.  *Id.* ¶¶ 22-23.  To get additional investments, Shvartsshteyn invited Gibly to tour a Best Buy distribution center in Piscataway, New Jersey.  *Id.* ¶¶ 23-24. "Upon information and belief, [Defendant] Best Buy Inc. owns and/or operates the Best Buy Facility."  *Id.* ¶ 24 n.1.  Gibly accepted the invitation and met Shvartsshteyn and Lusher at the warehouse on March 11, 2020.  *Id.* ¶ 25.  An employee "warmly greeted" Shvartsshteyn and Lusher, and "identified himself . . . as the Best Buy [f]acility's supervisor."  *Id.*  The employee led the trio on a tour of the warehouse, which involved going into restricted areas, and described the logistical operations at the site, including the computer systems used for scheduling deliveries. The employee referred to Shvartsshteyn and Lusher's delivery companies and their trucks.  *Id.* ¶ 26.  The employee also predicted that the Covid-19 pandemic, which was just beginning, would lead to more home deliveries and delivery opportunities for Shvartsshteyn and Lusher's

---

[3] The facts are derived from Plaintiffs' Complaint ("Compl.").  D.E. 1.  When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

companies. *Id.* ¶¶ 26-27. "[R]eassured by the representation" of the employee and the apparent affiliation with Best Buy, Gibly invested an additional $2,250,000 in 2020. *Id.* ¶ 29. Gibly believed that he was investing in two companies that were controlled by Shvartsshteyn and Lusher, and that had agreements to perform delivery and installation services with Best Buy. *Id.* Gibly also convinced two individuals, who are Plaintiffs in this matter, to make investments into Shvartsshteyn and Lusher's companies. *Id.* ¶¶ 30-31.

Shvartsshteyn and Lusher urged Gibly to invest more money. Shvartsshteyn and Lusher provided Gibly with documents that purportedly substantiated their business and invited Gibly on another tour of the Best Buy facility. *Id.* ¶ 33. On December 7, 2020, Gibly went back to the warehouse with Shvartsshteyn and Lusher, and they met with a different supervisor. This employee also "warmly greeted" Shvartsshteyn and Lusher. *Id.* ¶ 34. The employee took them on another tour through restricted areas and navigated Gibly through increased security procedures related to COVID-19. *Id.* ¶ 35. The employee introduced Gibly to additional employees. One of which described Best Buy's operations, including an automated system for packing products that were loaded onto trucks, and referred to "your orders" when speaking with Shvartsshteyn and Lusher. *Id.* ¶¶ 35-36. He also stated that Best Buy was "the busiest it had ever been," confirming the statement made by the supervisor during Gibly's first tour. *Id.* ¶ 37. Finally, the employee giving the tour explained that he invested in Shvartsshteyn and Lusher's businesses and was considering another substantial investment. *Id.* ¶ 35. This second visit reassured Gibly, and he shared details of the tour to the other Plaintiffs who had already invested in the business. *Id.* ¶ 38. An additional Plaintiff invested in the business after hearing about this visit. *Id.* ¶¶ 39-40.

In December 2020, Plaintiffs' payments that were due under the various investment agreements were delayed and then stopped entirely. *Id.* ¶ 42. A few weeks later, Shvartsshteyn

and Lusher admitted that their business was a fraud; none of the companies that Plaintiffs invested in were making deliveries for Best Buy.  *Id.* ¶ 44.  Plaintiffs then realized that the employees who participated in the tours participated in the fraud and, upon information and belief, knew their representations about the trucks were false.  Plaintiffs allege that Best Buy and its employees received kickbacks and other payments for making these misrepresentations.  *Id.* ¶ 45.

Plaintiffs brought suit against Defendants, asserting claims for (1) aiding and abetting Shvartsshteyn and Lusher's fraud (Count One); (2) fraud (Count Two); and (3) Negligent Misrepresentation (Count Three).  For all counts, Plaintiffs allege that they "reasonably relied" on the employees' "apparent authority to act on behalf of Best Buy."  *Id.* ¶¶ 51, 58, 63.  Defendants subsequently filed the instant motion pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  D.E. 19.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and

therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

"Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016); *see also Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (explaining that "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007))). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III.   ANALYSIS

As discussed, Plaintiffs allege that the employees that met with Gibly at the warehouse are Defendants' agents. Plaintiffs further allege that Defendants are vicariously liable for the alleged misconduct of these agents through the doctrine of apparent authority. *See, e.g.*, Compl. ¶¶ 50-51.

Defendants contend that the Complaint must be dismissed because Plaintiffs fail to establish that Defendants are vicariously liable for the employees' alleged wrongdoing.[4]  Defs. Br. at 22-24.

Under New Jersey law,[5] "[a]n agency relationship is created 'when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *N.J. Lawyers' Fund for Client Protection v. Stewart Title Guar. Co.*, 1 A.3d 632, 639 (N.J. 2010) (quoting Restatement (Third) of Agency § 1.01 (2006)).  A principal may be liable for the acts of its agents "only when the agent acts with 'authority.'"  *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 373 (D.N.J. 2004).  Authority may be "actual" or "apparent."  *Sears Mortg. Corp. v. Rose*, 634 A.2d 74, 79-80 (N.J. 1993).  "Apparent authority arises 'when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'"  *N.J. Lawyers' Fund*, 1 A.3d at 639 (quoting Restatement (Third) of Agency § 2.03).  In other words, apparent authority arises not from actual authority but instead "because of actions by a principal which have misled a third party into believing that a relationship of authority does, in fact, exist."  *Jennings v. Reed*, 885 A.2d 482, 490 (N.J. Super. Ct. App. Div. 2005) (quoting *Wilzig v. Sisselman*, 506 A.2d 1238, 1244 (N.J. Super. Ct. App. Div. 1986)).

---

[4]  Defendants argue that Plaintiffs must establish vicarious liability through the doctrine of *respondeat superior*, and that Plaintiffs fail to do so here.  Defs. Br. at 22-23.  Because Plaintiffs do not allege *respondeat superior* liability, the Court does not address this argument.

[5] The parties appear to assume that New Jersey law applies.  Seeing no clear reason to deviate from this assumption, the Court applies New Jersey law.  *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

To establish agency through apparent authority, plaintiffs must plead (1) that the conduct of the alleged principal, "and not solely by the conduct of the putative agent," created the appearance of authority; (2) that a third party "relied on the agent's apparent authority to act for a principal"; and (3) that the reliance was "reasonable under the circumstances." *Mayflower Transit, LLC*, 314 F. Supp. 2d at 374 (citing *Mercer v. Weyerhaeuser Co.*, 735 A.2d 576, 592 (N.J. Super. Ct. App. Div. 1999)).  Thus, an agent's conduct alone cannot establish the apparent authority.  And the analysis requires courts to look at the totality of the circumstances.  *N.J. Lawyers' Fund*, 1 A.3d at 639.

Plaintiffs argue that "[t]he Complaint amply pleads that Defendants created the appearance that its supervisors had authority."  Plfs. Opp. at 23.  But Plaintiffs' citations to the Complaint for support only address the employees' actions, who are the alleged agents here.  *See, e.g.*, Compl. ¶¶ 25-28 (alleging that an employee led Gibly, Shvartsshteyn, and Lusher through the facility in March 2020); ¶¶ 34-37 (alleging that Gibly, Shvartsshteyn, and Lusher met with different employees in December 2020).  Plaintiffs fail to include any allegations that address Defendants' actions or how Defendants created an appearance that they authorized the alleged actions of the employees.[6]  Accordingly, Plaintiffs fail to plead sufficient facts as to apparent authority.

In fact, the only allegation that addresses Defendants' alleged involvement in the fraud is that after Plaintiffs discovered the fraud, it was "clear that Best Buy and certain of its employees received kickbacks and other payments for making their material representations, . . . which they

---

[6] While not mentioned by Defendants, the Court notes that Plaintiffs are not even sure that Defendants own or operate the warehouse Gibly toured.  *See* Compl. ¶ 24 n.1 (pleading "[u]pon information and belief" that Defendant Best Buy Inc. owns and/or operates the warehouse).  Thus, it is not clear that the employees were even Defendants' employees.

reasonably expected Plaintiffs to rely upon."  Compl. ¶ 45.  But as discussed, the employees made the alleged misrepresentations, not Defendants.  Without allegations demonstrating that apparent authority exists, Plaintiffs' assumption that Defendants were in on the fraud is conclusory.[7]

Finally, Plaintiffs contend that *Gennari v. Weichert Company Realtors*, 672 A.2d 1190 (N.J. Super. Ct. App. Div. 1996) demonstrates that they adequately allege Defendants' liability through apparent authority.  Plfs. Opp. at 24.  In *Gennari*, the court determined that Weichert, a real estate company, could be vicariously liable for its real estate agents' alleged misrepresentations.  *Gennari*, 672 A.2d at 1212.  But this conclusion was based on the concept that usually, "a principal authorizing a servant or other agent to enter into [certain] negotiations . . . is subject to liability for loss caused to the other party."  *Id.*  As discussed, Plaintiffs do not plead any facts demonstrating that Defendants authorized the employees' alleged misconduct.

In sum, Plaintiffs fail to plausibly plead that there was apparent authority.  As a result, Defendants' motion is granted.

## IV.   CONCLUSION

For the foregoing reasons, and for good cause shown

---

[7] In their opposition brief, Plaintiffs argue that by hiring the supervisors that met with Gibly, Shvartsshteyn, and Lusher, Defendants placed the supervisors in a position that allowed them to provide tours and describe the inner workings of the warehouse.  Plaintiffs continue that this created the appearance that employees were making representations on Defendants' behalf.  Plfs. Opp. at 23.  These allegations about hiring do not appear in the Complaint, and Plaintiffs may not amend their pleading through the opposition brief.  *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984))).  But even if these allegations were in the Complaint, Plaintiffs do not include allegations or legal authority to support their argument that simply by hiring an employee, all conduct from that employee supports a finding of apparent authority.  For example, Plaintiffs fail to even plead that Best Buy knew these employees were giving tours, providing access to restricted areas, and discussing Best Buy's delivery and installation operations to third-parties.  Again, apparent authority focuses on the actions of the principal, and statements or conduct involving Defendants is notably absent from the Complaint.

IT IS on this 18th day of March, 2022,

**ORDERED** that Defendants' motion to dismiss (D.E. 19) is **GRANTED** and the Complaint is **DISMISSED**; and it is further

**ORDERED** that the dismissal is without prejudice. Plaintiffs shall have thirty (30) days to file an amended complaint that cures the deficiencies noted herein. If Plaintiffs do not file an amended pleading within that time, the claims dismissed herein will be dismissed with prejudice.

John Michael Vazquez, U.S.D.J.